BOARD OF DIRECTORS OF the ALPACA OWNERS AND BREEDERS ASSOCIATION, INC., a Colorado nonprofit corporation, Petitioner–Appellee,

v.

Rodney CLANG, Jerry Forstner, Libby Forstner, Michael Safley, Kenneth Madl, Greg Mecklum, Jim Morton, Jan Davis, Arlin McCroskie, Amy McCroskie, Floyd Romanik, Ana Romanik, and Steve Hull, Intervenors–Appellants.

No. 02CA1984.

Colorado Court of Appeals, Div. V.

Oct. 23, 2003.

Perkins, Coie, LLP, Frederick T. Winters, Denver, Colorado, for Petitioner–Appellee.

Walters & Joyce, P.C., William E. Walters, III, Craig D. Joyce, Denver, Colorado, for Intervenors–Appellants.

Opinion by Judge ROY.

In this action brought pursuant to § 7–121–601, C.R.S.2002, appellants, dissenting members of the Alpaca Owners and Breeders Association, appeal the trial court's order denying their motion for reconsideration of an order validating a vote amending the association's by-laws. We vacate the order and remand for further proceedings.

The association was incorporated as a nonprofit corporation in Colorado in 1993. Its original by-laws stated:

> Amendments to the By–Laws may be proposed by a petition signed by twenty (20) percent of the paid Membership of the association or by the majority vote of the Board of Directors. *The By–Laws may be amended by 2/3 affirmative vote, including votes cast by mail, of the [sic] all Members entitled to vote.* Notice that such business is one of the purposes of the Annual Meeting shall be given in advance to Members in the same time and manner as provided for Notice of Meetings.... A copy of any proposed amendment of the By–Laws, including any recommendation the Board of Directors may wish to make on the amendment, shall accompany the notice of the meeting. Members may vote on a proposed amendment of the By–Laws by voting at the meeting or by mail. Votes cast by mail on a proposed amendment shall count for purposes of determining a quorum at the meeting.

(Emphasis added.)

The by-laws define a quorum as "[t]hirty percent of all members entitled to vote."

The association has submitted proposed amendments to its membership on four occasions: 1994, 1996, 1999, and 2002. On each occasion, the proposed amendments were presented at the annual meeting after appropriate notice, and ballots were distributed to the membership by mail. Only thirty-eight to fifty-two percent of the membership enti-

tled to vote voted in the elections. The votes were tallied, and the association declared the proposed amendments adopted if they received a vote of two-thirds of a quorum (thirty percent) of the membership.

Following the 2002 vote, a member questioned and ultimately formally protested the vote, arguing that amending the by-laws required a two-thirds affirmative vote of all members entitled to vote. Several more members, including a minority of the board, joined the protest.

The association then filed a petition for judicial relief pursuant to § 7–121–601, requesting that the court "exercise its discretion to fashion a fair and equitable method for resolving the uncertainty surrounding the corporation's latest attempt to amend its By-Laws." The association further requested that the court issue an order validating the 2002 vote. This petition was brought in the name of the association alone and did not name any defendants or respondents. Dissenting members sought to intervene in opposition to the petition. One day later, the trial court, apparently unaware of the attempt to intervene, issued its order declaring that the 2002 vote was valid and binding on the association, its board of directors, and its members.

Dissenting members then filed a motion requesting reconsideration of the order. The trial court stayed its order, and the association filed a response. After reviewing the petition, motions, briefs, and responses, the trial court denied the request for reconsideration. The trial court concluded that its original order was "consistent with Colorado law and appropriate" pursuant to § 7–121–601 and, therefore, remained in effect. The dissenting members filed this appeal.

## I.

■ The dissenting members contend that the court misapplied § 7–121–601. They argue that the statute only allowed the court to either order a meeting or authorize a new method of obtaining votes. We agree.

Section 7–121–601 states, in relevant part:

(1) If for any reason it is impractical or impossible for any nonprofit corporation to call or conduct a meeting of its members ... in the manner prescribed by ... [its] bylaws, then upon petition of a director ... the district court ... *may order that such a meeting be called or that a written consent or other form of obtaining the vote of members ... be authorized, in such a manner as the court finds fair and equitable under the circumstances.*

. . . .

(3) *The order issued pursuant to this section may dispense with any requirement relating to the holding of or voting at meetings or obtaining votes, including any requirement as to quorums or as to the number or percentage of votes needed for approval, that would otherwise be imposed by ... [the] bylaws.*

(4) Whenever practical, any order issued pursuant to this section shall limit the subject matter of meetings or other forms of consent authorized to items, including amendments to the ... bylaws, the resolution of which will or may enable the nonprofit corporation to continue managing its affairs without further resort to this section.

(Emphasis added.)

The Colorado Revised Nonprofit Corporation Act, § 7–121–101, et seq., C.R.S.2002, of which § 7–121–601 is a part, is based on the Revised Model Nonprofit Corporation Act (1987). With respect to § 1.60, the counterpart of § 7–121–601, the official comment to the model act states:

Section 1.60 provides an escape valve allowing nonprofit corporations to conduct meetings or obtain the consent of members, delegates or directors when it is otherwise impractical or impossible to do so. For example, a corporation may have a high quorum requirement preventing it from holding a meeting of members because the required number of members won't attend a meeting.... The section allows directors ... to petition the appropriate court for an order allowing the members or directors to vote or hold a meeting even if the order dispenses with requirements of the Model Act, the articles

or bylaws concerning voting or holding meetings. . . .

Revised Model Nonprofit Corporation Act § 1.60 official comment at 45–46.

Section 7–121–601 applies when it is impossible or impractical for a nonprofit corporation to conduct a meeting or obtain the consent of its members. The statute then gives the court power to design a fair and equitable mechanism to remove an impasse independent of, and unencumbered by, the applicable governing statute, the corporation's articles of incorporation, the corporation's by-laws, or all three. The purpose of relief under the statute is to extricate the corporation from an impasse and enable the corporation to amend its governing instruments so as to avert future impasses without further resort to the statute. *See* § 7–121–601(4).

Thus, to determine whether relief is available under § 7–121–601, the court must first determine whether it is impractical or impossible for the association to amend its by-laws or conduct other business requiring the approval of the membership. If that circumstance exists, then the court is empowered to fashion a workable procedure or mechanism; if not, the petition should be dismissed.

■ Section 7–121–601 is not a substitute for a declaratory judgment proceeding pursuant to C.R.C.P. 57 or § 13–51–101, C.R.S. 2002. Declaratory judgment proceedings are designed to resolve a dispute between parties as to their respective rights, status, or obligations under a law, controlling instrument, or relationship.

Here, the trial court essentially granted a declaratory judgment concluding that the 2002 vote was valid and amending the by-laws. While the association requested that relief, it is not available under § 7–121–601.

Therefore, the matter must be remanded to the trial court to determine, after a hearing if necessary, whether it is impractical or impossible for the association to conduct a valid election for the amendment of its by-laws. If the trial court so determines, then it should fashion a procedure for conducting an election at which a workable by-law for amending the by-laws must be submitted to the membership in order to avoid future resort to the statute.

## II.

■ We reject the association's contention that this issue was not properly raised in the trial court.

Here, the association's petition did not make the dissenting members parties to the proceedings. Therefore, they did not have the normal opportunity to answer and thereby define the scope of the proceedings. The dissenting members, however, raised a variation of the issue in their motion to intervene by asserting that judicial relief under the statute was inappropriate. Thus, in our view, the issue was adequately preserved for appeal.

Because of our resolution of the issue as to the applicability of § 7–121–601, we need not address the remaining issues raised by the parties.

The order is vacated, and the case is remanded to the trial court for further proceedings consistent with this opinion.

Judge CASEBOLT and Judge PICCONE concur.